***********
This matter was reviewed by the Full Commission based upon the record of the proceedings before Deputy Commissioner Taylor, along with the briefs and arguments on appeal. The appealing party has not shown good ground to receive further evidence or to amend the prior Opinion and Award. Accordingly, the Full Commission adopts and affirms the Deputy Commissioner's holding, with some modification, and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties at the hearing on 4 September 2001 as:
 *********** STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission, and the Commission has jurisdiction of the parties and of the subject matter.
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. The date of the injury by accident is June 6, 1998.
4. At the time of the injury by accident, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act, and there was an employer-employee relationship between the parties with defendant-employer being self-insured and administered by Key Risk Management.
5. On June 6, 1998, the plaintiff was injured by accident.
6. The parties stipulated into evidence as Stipulated Exhibit 1, a packet of the plaintiff's medical records.
 ***********
Based upon the evidence of record, the Full Commission enters the following:
 FINDINGS OF FACT
1. At the time of the hearing in this matter, the plaintiff was a 50 year old female, born January 3, 1951. The plaintiff graduated from high school. The plaintiff became employed with defendant-employer in 1992.
2. As a child the plaintiff was diagnosed with a congenital hip condition and underwent surgery. The plaintiff continued as an adult to have intermittent treatment for her hip and back. The plaintiff treated with Dr. P. K. Vyas, an internal medicine specialist, since August 1990. During that time the plaintiff complained of right hip and lower back pain in December and January of 1991, migraines in August 1991, hiatal hernia and anxiety in March 1992, abdominal pain and arthritis follow up in April 1993, migraine in June 1993, worsening arthritic pain in October 1993, migraine with neck pain in January 1994, migraine in April 1994 and June 1994, right knee pain in April 1995, headaches in March 1996 and various cold and other non-joint related problems from November 1996 through March 1998.
3. Throughout this time, the plaintiff was actively and completely employed in two full-time jobs and volunteered with EMS.
4. On June 6, 1998, the plaintiff sustained a compensable injury at work when she fell face forward on to her right knee and face while walking from the kitchen to her work area. The plaintiff was taken to the emergency room.
5. Following her discharge from the hospital, the plaintiff sought treatment with Dr. Vyas complaining of headache and pain from her neck, shoulders, legs, knee, hips and lower back and reporting a history of her June 6, 1998 fall. Throughout June 1998, the plaintiff continued to complain of pain, and Dr. Vyas referred her to Dr. Dwayne Patterson, an orthopedics specialist, as well as to a neurologist for her headaches. Thereafter, the plaintiff saw both Dr. Vyas and Dr. Patterson concurrently.
6. The plaintiff continued to experience pain in July and August and was treated by Dr. Vyas for persistent hip and low back pain as well as headaches.
7. On November 20, 1998, Dr. Patterson released the plaintiff to return to work with sitting and standing restrictions. Also during November 1998, the plaintiff was treated by Dr. Vyas for her problems sleeping. The plaintiff had preexisting problems sleeping but these symptoms worsened following her fall with her neck pain and chronic low back pain. In November 1998, Dr. Vyas recommended the plaintiff have pain management with Dr. Gupta. Defendant did not authorize this treatment.
8. On October 23, 1998, the plaintiff underwent an independent medical evaluation required by defendant and performed by Dr. Scott Sanitate, a physical medicine and rehabilitation specialist. Dr. Sanitate was not retained to treat the plaintiff and was only retained for a one-time evaluation. Dr. Sanitate's recommendation was that the plaintiff attempt to return to work in a sedentary capacity.
9. On November 23, 1998, defendant-employer sent the plaintiff a letter requiring her to return to work on December 1, 1998 at 3:00 p.m. indicating that they would comply with Dr. Patterson's sitting and standing restrictions.
10. The plaintiff last received workers' compensation benefits November 30, 1998.
11. On December 1, 1998, the plaintiff returned to work. At that time, the plaintiff was under restrictions from Dr. Patterson of work at light duty, primarily sedentary type work with alternating between sitting and standing every ten minutes or so for one to five minutes and no lifting greater than ten pounds.
12. When the plaintiff returned to work, the job she was given did not allow her to work within her restrictions. The plaintiff worked her entire shift on December 1, but did not return to work on December 2, 3 or December 4, her scheduled day off. The plaintiff returned to work on December 5, but could not walk from her area to the break room and back or the bathroom and back within the allotted time frame for her break. The pain in her back, hip and leg was made worse by the physical demands of her job.
13. The plaintiff did not work after December 5, 1998.
14. The plaintiff was not provided pain management by defendant-employer.
15. In December 1998, the plaintiff was treated several times for migraines.
16. In December 1998 and January 1999, the plaintiff's headaches continued to worsen and the increased pain in her lower back and hip triggered migraine headaches.
17. In January and February 1999, the plaintiff returned to Dr. Vyas complaining of persistent pain in the back and hips as well as headaches. Dr. Vyas referred the plaintiff to UNC Memorial where she underwent multiple pain evaluations.
18. On June 10, 1999, the plaintiff presented to Dr. Scott Kelley, a specialist in hip and knee reconstruction. The plaintiff presented to Dr. Kelley unable to stand on one leg, with painful range of motion to the hip, decreased strength about the muscles of the hip and back and extreme difficulty walking and moving. The plaintiff gave a history of adolescent hip disease that healed toward the end of childhood. Dr. Kelley anticipated that without the plaintiff's compensable fall she would have probably required a hip replacement in her mid 60s.
19. Dr. Kelley was of the opinion that the plaintiff had an aggravation of preexisting arthritis which was aggravated by her fall. He was of the opinion that her fall was the key triggering event. He was further of the opinion that without the plaintiff's fall her hip replacement surgeries would have been approximately 20 to 30 years later.
20. By October 16, 1999, the plaintiff was not improving and Dr. Kelley was of the opinion that a hip replacement was the plaintiff's only option.
21. In December 1999, the plaintiff underwent a left total hip replacement performed by Dr. Kelley. Dr. Kelley is of the opinion that the plaintiff had a very good recovery and was an extremely hard worker in her rehabilitation. He is further of the opinion that the plaintiff is very motivated to recover, that the plaintiff's complaints are legitimate and that when her treatment is appropriately managed she does very well.
22. Following the plaintiff's surgery in January 2001, the plaintiff complained of pain in the right hip and of knee pain.
23. Dr. Kelley is of the opinion that the plaintiff will be unable to work until her right hip is addressed through surgery and that her protracted course of treatment may cause her to have bilateral knee pain also related to her fall. This knee pain may also need treatment.
24. Dr. Kelley was of the opinion that no time during his treatment of her could the plaintiff have worked at any job.
25. Dr. Kelley's opinion is further that the plaintiff's frequent falls since her injury are all attributable to her compensable fall and will be until the plaintiff's condition is stabilized.
26. The plaintiff continues to treat with Dr. Vyas complaining of chronic pain, depression and fatigue.
27. Dr. Vyas is of the opinion that the plaintiff's preexisting depression was worsened in part by her compensable injury and the resulting pain.
28. Dr. Vyas is of the opinion that the plaintiff's compensable fall aggravated her preexisting low back pain and other arthritic pain and could have aggravated her preexisting migraines.
29. On June 6, 1998, the plaintiff sustained an admittedly compensable injury by accident.
30. As a direct and proximate result of her June 6, 1998 compensable injury, the plaintiff sustained an aggravation of her low back pain, arthritic condition, as well as pain in her hips and knees and aggravation of her migraines.
31. The plaintiff's return to work in December 1998 was a failed trial return to work.
32. The plaintiff did not refuse suitable work.
33. The plaintiff has been unable to earn the same wages in the same or any other employment as a direct and proximate result of her compensable injury and has been totally disabled from all employment since December 5, 1998.
34. The plaintiff has not yet reached maximum medical improvement.
35. The plaintiff is entitled to temporary total disability compensation at the rate of $345.59 per week from December 6, 1998 and continuing.
36. There is a substantial risk that the plaintiff will require future medical treatment for her compensable conditions.
37. The plaintiff is entitled to all medical treatment reasonably intended to effect a cure, reduce her symptoms or lessen her disability regarding her aggravated low back pain, arthritic pain, hip and knee pain and aggravated migraines as long as the same are related to her compensable injury.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On June 6, 1998, the plaintiff sustained an admittedly compensable injury by accident.
2. As a direct and proximate result of her June 6, 1998 compensable injury, the plaintiff sustained an aggravation of her low back pain, arthritic condition, as well as pain in her hips and knees and aggravation of her migraines.
3. The plaintiff's return to work in December 1998 was a failed trial return to work.
4. The plaintiff did not refuse suitable work.
5. The plaintiff has been unable to earn the same wages in the same or any other employment as a direct and proximate result of her compensable injury and has been totally disabled from all employment since December 5, 1998.
6. The plaintiff has not yet reached maximum medical improvement.
7. The plaintiff is entitled to temporary total disability compensation at the rate of $345.59 per week from December 6, 1998 and continuing.
8. There is a substantial risk that the plaintiff will require future medical treatment for her compensable conditions.
9. The plaintiff is entitled to all medical treatment reasonably intended to effect a cure, reduce her symptoms or lessen her disability regarding her aggravated low back pain, arthritic pain, hip and knee pain and aggravated migraines as long as the same are related to her compensable injury.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. For her temporary total disability, defendant shall pay the plaintiff compensation at the rate of $345.59 per week from December 6, 1998 and continuing. Portions of this amount have accrued and shall be paid in a lump sum. This amount shall be paid subject to an attorney's fee contained in Paragraph 2.
2. An attorney's fee of 25% is approved as a reasonable attorney's fee for the plaintiff's attorney and shall be deducted directly from the amounts owed to the plaintiff and paid directly by defendant to the plaintiff's attorney. The plaintiff's counsel shall receive every fourth future compensation check until further Order of the Commission.
3. Defendant shall provide all medical and psychological treatment related to the plaintiff's compensable injury in the past and in the future.
4. Defendant shall pay the costs.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER